J. W. DUNNAWAY ET AL., APPELLANTS, v. STONE & WEBSTER ENGINEERING CO., EMPLOYER SOUTHERN SURETY CO. OF NEW YORK, RESPONDENT.—61 S. W. (2d) 398.

Kansas City Court of Appeals, May 22, 1933.

*Atwood, Wickersham, Hill & Chilcott* and *T. W. Imes* for appellant.

*John J. McNulty* and *David Lynn* for respondent.

SHAIN, P. J.—This is an action brought under the Workmen's Compensation Act by the parents of a minor son to recover compensation for his death.

The facts are that Orville Dunnaway, now deceased, age nineteen (19), was employed by Stone & Webster Engineering Corporation and, at the time of the occurrence of his death, he was assigned to duty on one of the employer's barges being used in the construction of the Bagnell Dam in Miller County, Missouri. The labor being performed by deceased on the day he met his death was that of boiler washing.

The work was being done on the employer's barge and the deceased was working with and in his work was under one, Duffy, another of the employees of the corporation.

It appears in evidence that it was a custom for the employees to work every day of the week. On August 17, 1930, the deceased had been working at cleaning boilers in the forenoon. When the noon hour came, the deceased and his fellow worker, Duffy, quit for dinner and having brought their lunch they ate on the barge. After eating, the evidence discloses, the deceased expressed a desire to fish; that Duffy furnished him a piece of chalk line; and, that Duffy saw deceased fasten a hook and tie a bolt on the line. It is shown that Duffy saw deceased catching grasshoppers for bait but never saw the deceased in the act of fishing. Duffy testifies that he heard deceased exclaim that he had lost his line and afterwards heard him say that he would get it. Duffy testifies that thereafter he heard a noise or splash and that he went to the part of the barge where the deceased had been and saw from the bubbles or commotion of the water that the boy had fallen in the river, and that he then threw a rope out to where he saw the disturbance in the water and called for help. Others came to the rescue and by use of boat and pole and hook the boy was taken from the water on to the barge. However, all efforts to revive him failed.

The evidence discloses that it was customary for employees to take their dinner and eat same on the works. The evidence is to the effect that employers gave time off for dinner from twelve to one P. M., and that the employees did not receive pay for this time that they were off.

Based upon the fact that their minor son had come to his death in the manner above set forth, the parents J. W. Dunnaway and Mrs. J. W. Dunnaway applied to the Commission for compensation upon the grounds that their minor son, at the time he lost his life, was in the employ of Stone & Webster Engineering Corporation and that the accident, wherein the son lost his life, was one arising out of and in the course of employment.

Hearing was first had before referee Jennings of the Workmen's Compensation Commission of Missouri.

The claimants duly presented evidence of their dependence upon their minor son. Evidence of the accident and death, as above narrated, was duly introduced.

The deceased son, when taken from the water, was minus his shoes and cap. Duffy, the deceased's companion on the job, testified that he saw the shoes and hat lying on the deck. Duffy further testified that he saw a fishing line sinking when he first went to the scene.

Hearing was had before the referee at City of Damsite, Missouri, on February 9, 1931. At this hearing the following stipulation was filed.

"It is hereby agreed and stipulated by and between the parties hereto that on or about August 17, 1930, Orville Dunnaway suffered death by drowning while in the employment of Stone & Webster

Engineering Corporation; both the employer and employee were operating under the Act; all liability under such Act is fully covered by the Southern Surety Company of New York. It is further agreed that the employer had notice of the death within thirty days from the date same occurred and the claim for compensation was filed within the time prescribed by law. The only question in the case at this time is as to whether or not the death was caused by an accident arising out of and in the course of his employment.''

The claimants presented at this hearing that the deceased, by reason of the fact that employees were accustomed to taking their dinner on the works, was at the time of the accident in the course of his employment and that his death was incident to his employment.

At the close of all the evidence, the referee made the following award.

''The above parties having submitted their disagreement or claim for compensation for the above accident to the undersigned referee of the Missouri Workmen's Compensation Commission, and after hearing the parties at issue, their representatives, witnesses and evidence, the undersigned hereby finds in favor of the above employer and insurer and against the above dependents and awards no compensation for the above accident.

''For the reason that deceased did not suffer death from an accident arising out of and in the course of his employment.

''Attached hereto are the findings of fact and rulings of law made in connection herewith.

''Given at the City of Jefferson, State of Missouri, this 25th day of February, 1931.

''D. R. JENNINGS,
''Referee Missouri Workmen's
Compensation Commission.

''A true copy. Attest:

''WM. T. FINDLY,
''(Seal)                    Secretary of said Commission.''

The referee in his statement and rulings of law further said:

''An accident to be a compensable one within the meaning of the Workmen's Compensation Act, must be one arising both 'out of' and 'in the course' of employment. [Metting v. Lehr Const Co. (Mo. App.), 32 S. W. (2d) 121.]

''The mere fact of an accident happening on the premises is not enough to form a presumption that the same arose out of and in the course of the employment. [Smith v. Levis-Zukoski Merc. Co. et al. (Mo. App.), 14 S. W. (2d) 470, and Stone v. Blackmer and Post Pipe Co. (Mo. App.), 27 S. W. (2d) 459.]

''While the accident occurred in the course of the employment it did not arise out of the employment. The deceased employee at

the time he met his death by accidental drowning was doing something (namely fishing) for his own pleasure and nothing to further the interest of his employer nor as a part of the services which required his presence on the barge. [Sec. 3305, R. S. Mo., 1929.] Compensation is therefore denied. [Hager v. Pulitzer Pub. Co. et al. (Mo. App.), 17 S. W. (2d) 578, and Wahlig v. Grocer Co. (Mo. App.), 29 S. W. (2d) 128.]

"Filed December 28, 1931. O. O. Wyrick, Clerk of Circuit Court.
"Date February 25, 1931.

"Made by D. R. JENNINGS,
"Referee Missouri Workmen's Compensation Commission.

"(Seal)
"A true copy, Attest:
"WM. T. FINDLY,
"Secretary."

On February 28, 1931, claimants filed, under the provisions of Section 43 of the Workmen's Compensation Act, an application for review of the case before the full commission. Much objection was made to granting of a rehearing. The objection was based upon the ground that the claimants were seeking to establish liability on an entirely new ground than that presented in the hearing before the referee.

On October 29, 1931, rehearing before the whole Commission was granted and the cause set for November 16, 1931. There appears to have been several continuances. It appears from the record that these continuances were had in part because of the fact that the case of Conklin v. Kansas City Public Service Company was then pending in the Kansas City Court of Appeals, wherein similar issues were before the appellate court but as yet had not been decided. The opinion in the Conklin case was decided by this court at the April call, 1931. A rehearing was refused May 4, 1931, and *certiorari* denied by the Supreme Court, June 30, 1931, and the Conklin case is now officially reported in 41 S. W. (2d) 608.

A hearing on review before the whole Commission was had on November 16, 1931. At this hearing, before the whole Commission, evidence was heard in support of claimants' contention that fishing was common practice on the works and that it was a custom for the employees to fish on the works and that therefore the accident arose out of the employment.

At the close of the evidence, the Commission made the following finding:

"The above parties having submitted their disagreement or claim for compensation for the above accident to the undersigned members of the Missouri Workmen's Compensation Commission, and after

hearing the parties at issue, their representatives, witnesses and evidence, the undersigned hereby find in favor of the above employer and insurer and against the above dependents and award no compensation for the above accident.

"Affirming on review award dated February 25, 1931."

An appeal was duly taken to the Circuit Court of Miller County and on May 2, 1932, being the first day of the May term of that court a hearing was had resulting in the following entries:

"Now at this day, to-wit, the 2nd day of May, 1932, it being the first day of the May term, 1932, of this court, this cause coming on for final determination and the court being now fully understood doth affirm the award as given by the Workmen's Compensation Commission of the State of Missouri.

"Wherefore, it is ordered, adjudged and decreed by the court that the award of the Workmen's Compensation Commission be in all things affirmed and stand in full force and effect and that said respondents, Stone & Webster Engineering Corporation, employer, and Southern Surety Company, a corporation, insurer, recover against the appellants, Mr. and Mrs. Dunnaway, their costs and charges herein expended and have therefor execution."

From the judgment of the circuit court, the complainants have duly prosecuted appeal to this court.

It is presented in the appellant's brief that:

I. "The deceased met his death at the place where he was required to perform the duties of his employment and while engaged in a known practice with the express consent of his employer, and that a causal relationship existed between the employment and the fishing activity.

II. "Suitable recreation during intervals of employment are incidents of the employment and injuries arising from the recreation are properly arising out of and in the course of the employment.

III. "The death was occasioned by hazards peculiar to the particular employment, and, therefore, in the course of it and arising out of it."

In the case of Conklin v. Kansas City Public Service Company, supra, this court held that a street railway machinist, who was struck in the eye by a baseball bat while watching an indoor baseball game, during the lunch hour on employer's premises, received injury "out of and in the course of employment and that it was therefore compensable."

In the Conklin case the conclusion of the court rests upon the fact that the evidence clearly disclosed that the employer fostered the

baseball game as a means of raising the morale of the employees and even furnished a room in which the game was played, causing them to be better satisfied and efficient.

The question of "out of and in the course of employment" presents many difficulties to the writers of judicial opinion and one following the pathway of precedent oft' must follow a narrow ledge that skirts precipices where danger lurks.

The opinion in the Conklin case fully cites and quotes from opinions from courts of this and other States, and, the statement of principles involved, the differentiations made, and, the conflict of authority are therein so fully set forth that we need not here repeat the discussion. Suffice it to say, that the issue as presented in the case at bar bears analogy in some respects with the issue therein. In the opinion of the court the opinion in the Conklin case while sound and within the scope of the provisions for compensation, still, to go further than in that case would be error.

We conclude that the case at bar is distinguishable from the Conklin case in this respect. The conclusion reached in the Conklin case is based upon the fact that the ball game was fostered and encouraged by the employer to the end of efficiency of service of employees. In that case the employer furnished the room wherein the game was played. The place of assembly was for employees alone and only employees played therein and all was with the knowledge, consent and encouragement of the employer.

In the case at bar the evidence only shows knowledge was had by the employers that their employees did fish and that no objection was made to same. There is no evidence showing or tending to show that the employer fostered or even encouraged fishing. There is a vast difference between fostering and encouraging and mere passive assent. If the employer had furnished a barge or other facilities for the convenience of its employees to fish and as a means of recreation with end to more efficient service from the employees, then there would be reason for holding that the accident arose out of and in the course of employment.

We conclude that there is no showing; that the commission acted without or in excess of its powers; that the award was procured by fraud; that the facts as found by the commission do not support the award or that there was not sufficient competent evidence in the record to warrant the making of the award.

We conclude further, that the trial judge committed no error in sustaining the act of the commission in refusing compensation.

For these reasons the judgment of the circuit court herein is affirmed. All concur.