**Dorothy M. THOMPSON (Geringer), (Claimant) Respondent,**

**v.**

**OTIS ELEVATOR COMPANY (Employer), and Employers Liability Assurance Corporation (Insurer), Appellants.**

**No. 30189.**

St. Louis Court of Appeals.
Missouri.
June 16, 1959.

Sherwood R. Volkman, St. Louis, for appellants.

Jerome J. Duff, St. Louis, for respondent.

JAMES D. CLEMENS, Special Commissioner.

The claimant had a $1,400 Workmen's Compensation award, which was affirmed upon appeal to the circuit court. The employer and insurer again appeal. They

level a three-pronged attack at the award, urging that the injury arose from claimant's horseplay, did not arise in the course of her employment, and is not supported by substantial medical evidence.

■ We will view the evidence in the light most favorable to the findings and award of the Industrial Commission. Adams v. Koss Const. Co., Mo.App., 311 S.W.2d 66, and cases cited. Claimant was a 20-year-old stenographer. Her lunch hour was from twelve to one o'clock, and she went out to eat and returned a few minutes before one. She went to the women's lounge located on the floor where she worked. This lounge had a room with toilet facilities and another furnished with sofas, chairs and a large table at which the women played cards and some ate their lunches. It was the only place where women employees were permitted to smoke. When claimant entered the lounge it was crowded. She laid her purse on the table and walked into the toilet. At about one o'clock claimant returned to get her purse, sit down and apply her cosmetics. Some of the women were still playing cards at the table, and others were standing and some seated on the sofas talking. As claimant came to the end of the table to reach for her purse she stepped past a vacant chair about two feet from the table. Standing nearby was another employee, Norma Bick, facing away from claimant and the table. Claimant reached far over on the table for her purse, stepped backward two steps toward the chair and sat down. In the meantime, Miss Bick, not knowing of claimant's intentions, had pulled the chair aside and sat in it herself. As a result, claimant fell to the floor, landed upon her hinder parts, and injured her coccyx. Claimant was in a hospital a week, at her home a week, and then came back to work. She complained of continuing feelings of pain and pressure during some normal physical activities. Her doctor diagnosed her condition as a 50° displacement of the angulation of the coccyx, and rated her permanent partial disability at 15%.

The appellants' doctor rated claimant's disability at 5 to 10% based entirely on subjective complaints. Appellants produced two witnesses to claimant's fall. A Miss Lakebrink, who was playing cards at the time, "guessed" and "imagined" that claimant and Miss Bick were vying for the chair and that Miss Bick got it, but this witness was definite only about claimant having fallen. Miss Bick had signed a statement the day after the injury stating that she and claimant had tugged at the chair, both trying to sit in it, that she had won out and claimant had missed the chair and fallen to the floor. Miss Bick denied having so described the incident to appellants' investigator, testified that he declined to change the written statement as she then requested, and said she signed it because he told her she had to, all at a time when she was frightened over a feeling of responsibility for claimant's injury.

■ Appellants' first point is that the injury arose from voluntary horseplay by the claimant, relying on the case of Hager v. Pulitzer Publishing Co., Mo.App., 17 S.W.2d 578. That case denied compensation to an employee who injured himself throwing a stick at another employee. It is doubtful that even the appellants' own evidence makes a substantial showing of voluntary horseplay, but that is not the question for us. We do not weigh the evidence, but seek to determine if the award of the Commission is supported by competent and substantial evidence. Mo.Const. Art. V, § 22, V.A.M.S.; Brown v. Anthony Mfg. Co., Mo., 311 S.W.2d 23. There is such evidence, in abundance, to refute appellants' contention of horseplay by the claimant.

■ Appellants contend that the claimant's injury did not arise "in the course of employment", and that claimant is beyond the pale of the act because she was still on her lunch hour when hurt, because she did not have to be in the lounge at the time she was injured, because she was not then doing anything connected with her work,

and that applying cosmetics was not incidental to her employment. We do not believe the act is to be so narrowly construed. Under Section 287.800 RSMo 1949, V.A.M.S., the Workmen's Compensation Law is to receive a liberal construction as to the rights of employees. Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769, 773(4, 5); Conyers v. Krey Packing Co., Mo. App., 194 S.W.2d 749, 751(1).

■ It has been quite uniformly held that an injury arises "out of the employment" when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury; and that an injury to an employee arises "in the course of" his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto. Morgan v. Duncan, 361 Mo. 683, 236 S.W.2d 281, 283(2, 3); and see Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W.2d 915, 919(9), 161 A.L.R. 1454, which quotes from 71 C.J. 675, § 420, to the effect that an injury sustained in the performance of an act for the mutual benefit of the employer and employee usually arises out of and in the course of the employment and is compensable even though the advantage to the employer is slight.

■ The issue raised is whether the claimant, in applying powder and lipstick, was doing something for her and her employer's mutual benefit, or by such conduct thereby abandoned her employment.

The prevailing rule, as stated in 99 C.J.S. Workmen's Compensation § 220, p. 722, is this: "Acts necessary to the life, comfort, or convenience of an employee while at work are incidental to the service and an injury occurring while in the performance of such acts may be compensable." Further reference to that section shows the general rule to be that employees who minister to their personal comfort, within the

time and space limitations of their employment, do not thereby necessarily leave the course of their employment. This rule is therein shown to cover such acts as satisfying thirst, seeking warmth, shelter or fresh air, heeding a call of nature, washing, resting or sleeping, using tobacco, and preparing to begin or quit work. Our courts have followed this principle.

In the case of Jackson v. Euclid-Pine Inv. Co., 223 Mo.App. 805, 22 S.W.2d 849, the employee was a night attendant in a garage and was suffocated when he got into a car and started the motor in order to keep warm. It was held that this act was not an abandonment of his employment, but was for the purpose of permitting him to work in comfort, and therefore for the ultimate benefit of his employer.

In Schultz v. Moerschel Products Co., Mo.App., 142 S.W.2d 106, 110, the claimant was a night watchman. While making his rounds he went to the toilet, and in re-arranging his clothes his pistol fell to the floor, fired and injured him. In sustaining the award, the court said: "He was injured while heeding a call of nature in a toilet provided by Moerschel for the use of its employees and which toilet and its lights had been shown to claimant by Moerschel's superintendent. The injury, therefore, arose out of and in the course of his employment. 71 C.J. 673, par. 416; Employers' Mutual Insurance Company v. Industrial Commission, 76 Colo. 84, 230 P. 394."

The case of Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S.W.2d 530, 534, dealt with an injury to a city salesman while walking his rounds. He sprained his ankle while leaving a place where he had stopped to quench his thirst with a soda. Compensation was upheld, the Supreme Court holding that an employer might reasonably expect such an employee to pause for refreshment during the course of his day's work and said: "A pause by an employee within reasonable limits of time and place to satisfy the needs of the body for food or drink, or even for refreshment, may-

well be considered as reasonably incidental to his work. Compare Markowitz v. National Headwear Co., 213 App.Div. 461, 210 N.Y.S. 673. See also 71 C.J., Workmen's Compensation Acts, § 413, pp. 671-2."

In Culberson v. Daniel Hamm Drayage Co., Mo., 286 S.W.2d 813, 817, the employee was a helper on the employer's truck, which stopped during the lunch hour. While waiting for the driver to finish his lunch, the employee lay down under the truck to get out of the hot sun. He fell asleep and failed to wake up when the driver returned. The truck was started and ran over the employee. The Supreme Court held that the employee had been injured in the course of his employment, saying: "It is the general rule that an employee who has no immediate duties except to wait does not deviate from his employment by utilizing the idle interval for rest and sleep. Larson, Workmen's Compensation Law, § 21.-74; Spencer v. Chesapeake Paperboard Co., 186 Md. 522, 47 A.2d 385. The falling asleep during the lunch period, and the negligent failing to awaken at the end thereof, did not constitute an abandonment of the employment under the circumstances of this case (citing cases)."

Here, the claimant was about to resume her work as a stenographer. She was in a place provided by her employer for resting, smoking and administering to personal needs and comfort. Applying cosmetics was for her personal comfort and convenience, but it was not a substantial deviation from or an abandonment of her employment. It violated no rule of her employer, and was something which the employer should have expected at such a place. It was an act of grooming akin to washing her hands or combing her hair. It no doubt added to her comfort and self-esteem and thereby permitted her to more efficiently concentrate upon her duties. Therefore, we hold that claimant was injured while performing an act incidental to, and hence arising in the course of her employment.

Appellants rely on two cases to support their theory that the claimant's injuries did not arise in the course of her employment, Schraner v. Massman Const. Co., Mo.App., 48 S.W.2d 104, and Everard v. Woman's Home Companion Reading Club, 234 Mo.App. 760, 122 S.W.2d 51. In the Schraner case, the employee worked on a stationary river boat and chose to live on an adjoining house boat in order to be close to his work. After leaving work at five p. m. he began drinking, and about midnight fell off the house boat and was drowned. At that time he was not "engaged in, or about the premises where his duties were being performed, or where his services required his presence as a part of such service", and hence his claim was excluded by the provisions of Section 287.-020, subd. 5, RSMo 1949, V.A.M.S. The distinction is obvious. The Everard case allowed compensation to a city salesman who stopped on his rounds to eat lunch and discuss work with his supervisor while they ate. He was injured while leaving the restaurant to resume his work. It was held that the claimant was injured in the course of his employment because the pause in his rounds involved a continuation of his work with his supervisor, and also because "the employee cannot be said to have departed from his employment merely because he stopped canvassing long enough to obey the call of nature for food." [234 Mo.App. 760, 122 S.W.2d 55.] Appellants' theory is not supported by that case.

■ Appellants next contend that the finding of ten per cent disability is not supported by substantial evidence, and in their brief they argue what they consider to be the weight of conflicting testimony. It is not our function to weigh these conflicts. We hold that the evidence of disability, related above, contains substantial evidence upon which the Commission could make its finding, and so we are bound thereby.

The Special Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of JAMES D. CLEMENS, Special Commissioner, is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

WOLFE, P. J., and ANDERSON, J., concur.

RUDDY, J., not sitting.